IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JEANETTE SCICCHITANO SMITH
and ALEXANDER SMITH,

      Plaintiffs,

          v.

SPECTRUM BRANDS, INC.,
SPECTRUM BRANDS PET GROUP, INC.,
and UNITED PET GROUP, INC.

      Defendants.

CASE NO. 2:21-cv-4983-HB

**REPLY BRIEF IN SUPPORT OF SPECTRUM BRANDS' MOTION TO EXCLUDE
EXPERT OPINIONS OF CHRISTOPH FLAHERTY**

In Spectrum Brands' opening brief, Spectrum Brands demonstrated that Mr. Flaherty's opinions, and specifically the methodology by which he derived his opinions, did not meet the standard set by Rule 702 of the Federal Rules of Evidence.

- Mr. Flaherty did not test motors with and without thermal protection devices and did not review any literature or testing that would inform him on the effectiveness of a thermal protection device in the product at issue. His opinion that the lack of a thermal protection device rendered the Pump Motor defective is therefore speculation.

- Mr. Flaherty did not identify any thermal cutoffs available at the time the Pump Motor was manufactured that, in his opinion, could or should have been installed. His opinion that a thermal protection device could have been added therefore lacks factual foundation because he could not identify a specific remedy to the purported defect and did not examine the feasibility of that remedy.

- Mr. Flaherty testified that he has opined between ten and twenty times previously that

- similarly sized motors with thermal protection devices caused fires, tacitly conceding that the purported "defect" of the absence of a thermal protection device would not have necessarily prevented the fire at issue.
- Mr. Flaherty did not attempt to rule out potential alternative causes of the fire in any reliable manner, rendering his opinion little more than guesswork issued without the rigors required to qualify as expert under Rule 702.

The facts remain unchanged: Mr. Flaherty possesses no knowledge of any thermal cutoffs devices that could, or should, have been installed on the Pump Motor; Mr. Flaherty cannot rule out other reasonable causes for the Pump Motor's failure; and Mr. Flaherty cannot identify any defect in the Pump Motor at the time it left the manufacturer. Mr. Flaherty's opinions should be excluded pursuant to Rule 702 of the Federal Rules of Evidence.

## ARGUMENT

### I. Mr. Flaherty Did Not Employ Reliable Principles and Methods in Forming his Design Defect Opinions Related to Thermal Cutoff Devices.

Plaintiffs agree with Spectrum Brands that an important focus of whether an expert's opinions are admissible are the "principles and methodology the expert employed" and whether the opinion rests upon "good grounds." (ECF 35-1 at 7 (citing Dalton v. McCourt Elec. LLC, 112 F. Supp. 3d 320, 324 (E.D. Pa. 2015) and USAA Cas. Ins. Co. v. Metro. Edison Co., No. 1:12-CV-1178, 2014 WL 3943706, at *4 (M.D. Pa. Aug. 12, 2014)). Although courts have leeway in determining whether a particular expert's testimony is reliable, it is well-settled that an expert cannot simply state an opinion – rather, he or she needs "good grounds" substantiating his or her testimony. Metro. Edison Co., 2014 WL 3943706, at *4. Here, Mr. Flaherty's principles and methods in reaching his opinions related to thermal cutoff devices were non-existent, and his

opinions do not rest upon good grounds. Accordingly, this Court should exclude his testimony pursuant to Rule 702.

Plaintiffs argue that, because Mr. Flaherty's opinions were admissible in Allstate Ins. Co. v. LG Elecs. USA, Inc., No. CV 19-3529, 2021 WL 2875603 (E.D. Pa. July 8, 2021), they should be admissible here. Experts must follow the "same level of intellectual rigor" in the courtroom that they use in their relevant fields. See Kumho Tire Co. v. Carmichael, 119 S.Ct. 1167, 1176 (1999). That an expert employed appropriate rigor in one case – or even in his or her relevant field – has no bearing on whether he or she employed appropriate rigor in this case. Id. Expert opinions offered in every case must meet the same level of intellectual rigor. As discussed in detail in Defendants' opening brief, Mr. Flaherty's opinions offered in this case are not reliable under Rule 702 standards.

In an effort to establish that Mr. Flaherty's opinion was adequately developed here, Plaintiffs attempt to distinguish this matter from Booth v. Black & Decker, Inc., 166 F. Supp. 2d 215, 221 (E.D. Pa. 2001) on the basis that "cognitive testing and deductive reasoning is testing a hypothesis for forensic investigators like Mr. Flaherty . . ." (ECF 35-1 at 16 (emphasis in original).) Mr. Flaherty, however, lacked any facts or data upon which to base his "cognitive" and "deductive" reasoning. Mr. Flaherty testified in detail about how a design engineer would select the appropriate thermal protective device for a motor. (ECF 32-05 ("Flaherty Dep.") 30:10-31:4.) Yet Mr. Flaherty conceded that he did not follow that process: he did not know the operating temperature of the Pump Motor, he did not know the temperature of the potting material in which the Pump Motor was encased, and he did not take into consideration the set point for any proposed alternative thermal protection device, its size, or any thermal protection devices that would have been available in 2002. (Flaherty Dep. 31:5-13; 49:8-50:11; 54:24-59:21.) Instead, Mr. Flaherty simply

3

leaped to the conclusion that a thermal protection device or "more robust impedance protection" "should" have prevented the subject fire without possessing any knowledge of the vital characteristics of the Pump Motor about which he was opining.

Plaintiffs argue that Mr. Flaherty "examined a number of products that have similar sized motors compared to the subject pump motor . . . that have incorporated a thermal cutoff switch into the motor," over the course of his career and that the failure to incorporate a thermal cutoff switch rendered the Pump Motor "defectively designed." (ECF 35-1 at 11-12.) Aside from his general knowledge of thermal cutoffs, however, Mr. Flaherty could not identify a single thermal cutoff device available at the time the Pump Motor was manufactured that, in his opinion, could, or should, have been installed. (Flaherty Dep. 55:18-21, 57:14-18.) Mr. Flaherty's opinion, therefore, lacks sufficient foundation to be admissible, and represents nothing more than a general statement that a device intended to stop a product from working if it becomes too hot should have prevented the subject fire. An expert's opinion must "assist" the trier of fact. UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres, 949 F.3d 825, 832 (3d Cir. 2020). Mr. Flaherty's generalized opinion is one that any jury could make for themselves without any assistance from Mr. Flaherty.

While Mr. Flaherty claims to have followed NFPA 921 in reaching his opinions, NFPA 921 requires the investigator to test his or her hypothesis regarding the cause of a fire. (ECF 35-09 § 4.3.6.) As part of testing the hypothesis, NFPA 921 requires the investigator to compare "the hypothesis to all known facts as well as the body of scientific knowledge associated with the phenomena relevant to the specific incident." (See id.) Mr. Flaherty cited no body of scientific knowledge in his report or during his deposition. Further, NFPA 921 allows the hypothesis to be "tested physically by conducting experiments, analytically by applying accepted scientific

4

principles, or by referring to scientific research." (Id.) Again, Mr. Flaherty did no physical testing, he applied no scientific principles specific to the product at issue, and he referenced no scientific research. Mr. Flaherty's opinions do not pass muster under Rule 702 of the Federal Rules of Evidence because he failed to base his opinions on "sufficient facts or data," to "use reliable principles and methods," and to apply "principles and methods to the facts of the case." See General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) (noting that in some cases a trial court "may conclude that there is simply too great an analytical gap between the data and the opinion proffered.")

Similarly, Plaintiffs argue that this case is distinguishable from Oddi v. Ford Motor Co., 234 F.3d 136, 146 (3d Cir. 2000) because, unlike the proposed design changes in Oddi, "[thermal cutoff switches] are tried and tested on the market that [manufacturers] – including Defendants – have incorporated into comparable motors for decades and have been proven to work." (ECF 35-1 at 16) (emphasis added.) Plaintiffs' argument misses the point and overstates the evidence: First, this argument misconstrues the testimony from Spectrum Brands. No Spectrum Brands witness was asked about the difference in performance of motors with and without thermal protection devices and no Spectrum Brands witness was asked whether similar pump motors had thermal protection devices at the times the Pump Motor at issue was manufactured. See generally ECF 35-11 ("Elam Dep."; ECF 35-12 ("Flora Dep."). Second, Mr. Flaherty did nothing to prove that thermal cutoff switches would have worked in this case. In fact, Mr. Flaherty failed to cite a single study or any data indicating that there is any correlation between the lack of thermal cutoff switches and a greater incidence of fires, which is significant since Mr. Flaherty has opined between ten and twenty times that a motor of a similar size to the Pump Motor with a thermal cutoff caused a fire. (Flaherty Dep. 53:4-18.) Furthermore, Mr. Flaherty did not testify that thermal protectors

5

only fail when they are "installed or manufactured incorrectly." (ECF 35-1 at 14.) Mr. Flaherty testified instead that thermal protectors can fail "depending on their manufacturer or the means of their installation," and did not rule out that thermal protectors can fail even when designed, manufactured, or installed correctly. (Flaherty Dep. 58:17-19.) Mr. Flaherty further indicated that thermal protectors have a set lifespan and can fail in the "closed position," which would render the device "unable at that point to protect the [electrical motor.]" (Id. at 59:3-15.) For this reason, Mr. Flaherty admitted he could not say that a thermal cutoff switch would have prevented the fire in this case. (Id. 58:8-19.)

Mr. Flaherty's design defect opinion is not supported by adequate facts or data and is not the product of reliable principles and methods. Mr. Flaherty's opinion should be excluded.

II. **Mr. Flaherty's Malfunction Theory Opinions are Likewise Deficient Under Rule 702.**

Even if Plaintiffs proceed under the malfunction theory, Mr. Flaherty again did not follow any reliable principles and methods rendering his opinion regarding the failure of the Pump Motor little more than guesswork without the rigors to qualify as an expert under Rule 702.

    A.    Mr. Flaherty Failed to Follow the Scientific Method in Opining Regarding How the Pump Could Have Been Defective When It Left the Manufacturer Yet Performed Successfully for over Sixteen Years.

Mr. Flaherty opined that a lack of varnish on the Pump Motor's windings could have caused the Pump Motor to overheat. (Id. 73:19-74:7.) Mr. Flaherty, however, testified that he had no evidence of inadequate varnish on the Pump Motor's windings at the time of its manufacture, (id. 73:19-74:7, 97:3-98:4, 103:15-24), and conceded that the dielectric test, which was done on every pump of this model before it left the manufacturer, verified at the time of manufacture that the varnish was adequate (id. 96:7-24). Accordingly, Mr. Flaherty's opinion lacks scientific basis and should be excluded. Meadows v. Anchor Longwall & Rebuild, Inc., 306 F. App'x 781, 790

6

(3d Cir. 2009) ("[E]xpert testimony based on assumptions lacking factual foundation in the record is properly excluded.").

Further, Plaintiffs concede that Mr. Flaherty "does not specifically opine that the varnish degraded here." (ECF 35-1 at 20.) If Plaintiffs concede that Mr. Flaherty "does not opine" that the varnish degraded in this case, then Plaintiffs abandon any argument that any defect existed when the Pump Motor left the manufacturer, because Plaintiffs offered no other theory, and Mr. Flaherty should not be allowed to testify to the contrary.

>    B.   Mr. Flaherty Failed to Exclude Reasonable Secondary Causes in Violation of NFPA 921.

NFPA 921 states in relevant part:

> The process of elimination is an integral part of the scientific method. All potential ignition sources present, or believed to be present in the area of origin should be identified and alternative hypotheses should be considered and challenged against the facts. Elimination of a testable hypothesis by disproving the hypothesis with reliable evidence is a fundamental part of the scientific method.

(ECF 32-09 § 19.6.5.) Investigators must have reliable evidence that a potential cause did not actually start the fire before eliminating that cause. See id. Mr. Flaherty has no such reliable evidence. With respect to cracks in the potting material, which Mr. Flaherty admits could have allowed water to penetrate to the windings and cause the Pump Motor to overheat, Plaintiffs argue in their brief that "the only possible explanation based on the evidence collected is [any cracks in the potting material were caused by a defect]." (ECF 35-1 at 17.) Mr. Flaherty did not offer any such opinion in his Report, (see generally ECF 32-04, "Flaherty Report"), or during his deposition, (see generally Flaherty Dep.). Mr. Flaherty even conceded that he did not know whether the potting material was cracked in the Pump Motor before the fire. (Flaherty Dep. 72:3-6, 99:8-18.)

The first time Plaintiffs offered any argument that the potting material was defective was in legal arguments in response to Spectrum Brands' Motion for Summary Judgment.

Mr. Flaherty's failure to consider potential alternative causes ignores the basic precepts of NFPA 921 and invalidates his causation opinions by the terms of that standard. Accordingly, Mr. Flaherty's methodology is not consistent with the underpinnings required for admissible expert opinion under Rule 702, and his opinions on causation should be excluded.

C. <u>Mr. Flaherty Does Not Assist the Jury.</u>

Plaintiffs argue that Spectrum Brands failed to explain "how the rotor of a motor encased in potting could have become locked in a manner that was not the result of a defect." (ECF No. 35-1 at 15.) Contrary to Plaintiffs' brief, the rotor was not encased in potting material and could have been exposed to foreign objects. (Exhibit 1.)[1] In fact, when asked whether a fish in the aquarium being in the wrong position could cause the rotor to lock, Mr. Flaherty responded "I don't know if it's possible for fish to wind up in the pumps, but if they can, yes." (Flaherty Dep. 91:5-6.) If Mr. Flaherty does not know enough about the motor which he claims is defective to know that the rotor is not encased in potting material and could become exposed to foreign objects, then Mr. Flaherty's testimony will not be helpful to a jury. Without basic information about the motor design, which he is criticizing, Mr. Flaherty should not be allowed to offer opinions.

## **CONCLUSION**

For the foregoing reasons, Spectrum Brands respectfully requests that the Court exclude the opinions proffered by Mr. Flaherty that the Pump Motor was defective.

This the 22nd day of June 2022.

---

[1] The white propeller depicted in this picture is the Pump Motor's rotor. This document was produced to Plaintiffs as SB_Scicchitano_0000442.

/s/ *Tiffany M. Alexander*
Tiffany M. Alexander
PA ID No. 88681
Tanenbaum Keale, LLP
1235 Westlakes Drive, Suite 215
Berwyn, PA 19312
Telephone: (610) 601-4608
Facsimile: (973) 242-8099
talexander@tktrial.com

and

/s/ *Dixie T. Wells*
Dixie T. Wells (admitted *Pro Hac Vice*)
N.C. State Bar No. 26816
Ellis & Winters LLP
300 North Greene Street, Suite 800
Post Office Box 2752
Greensboro, North Carolina 27402
Telephone: (336) 217-4193
Facsimile: (336) 217-4198
dixie.wells@elliswinters.com

Counsel for Spectrum Brands, Inc. and
Spectrum Brands Pet Group, Inc.

## **CERTIFICATE OF SERVICE**

    I hereby certify that a copy of foregoing document was served on all counsel of record addressed as follows, via electronic mail:

    Patrick Hughes
    de Luca Levine, LLC
    512 Township Line Road, Suite 220
    Blue Bell, PA 19422
    phughes@delucalevine.com

    Attorney for Plaintiffs

This the 22nd day of June 2022

    /s/ *Dixie T. Wells*
    Dixie T. Wells (admitted *Pro Hac Vice*)
    N.C. State Bar No. 26816
    Ellis & Winters LLP
    300 North Greene Street, Suite 800
    Post Office Box 2752
    Greensboro, North Carolina 27402
    Telephone: (336) 217-4193
    Facsimile: (336) 217-4198
    dixie.wells@elliswinters.com

    Counsel for Spectrum Brands, Inc. and
    Spectrum Brands Pet Group, Inc.