IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JEANETTE SCICCHITANO SMITH,    :       CIVIL ACTION
et al.                         :
               v.              :
                               :
SPECTRUM BRANDS, INC., et al.  :       NO. 21-4983

MEMORANDUM

Bartle, J.                                    August 17, 2022

        Plaintiffs Jeanette Scicchitano Smith and Alexander
Smith, wife and husband, have sued defendants Spectrum
Brands Inc., Spectrum Brands Pet Group Inc., and United Pet
Group Inc. (collectively "Spectrum Brands") in this diversity
action for strict liability, negligence, and breach of warranty.
Plaintiffs claim that an aquarium kit manufactured and sold by
Spectrum Brands was defective and caused a fire at their
residence.  The court has denied the motion of defendants to
exclude the testimony of plaintiffs' expert, Christoph Flaherty.
See Smith v. Spectrum Brands, Inc., 2022 WL 3229330 (E.D. Pa.
Aug. 10, 2022).  Before the court is defendants' motion for
summary judgment.

                              I

        Under Rule 56 of the Federal Rules of Civil Procedure,
summary judgment is appropriate "if the movant shows that there
is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P.
56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323
(1986).  A dispute is genuine if the evidence is such that a
reasonable factfinder could return a verdict for the nonmoving
party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254
(1986).  We view the facts and draw all inferences in favor of
the nonmoving party.  See In re Flat Glass Antitrust Litig.,
385 F.3d 350, 357 (3d Cir. 2004).

II

        The facts for present purposes are taken in the light
most favorable to plaintiffs.  As set forth more fully in this
court's memorandum denying defendants' motion to exclude the
opinions of plaintiffs' expert, this case concerns a fire in
plaintiffs' home in Lincoln University, Pennsylvania on or about
November 3, 2019.  Plaintiffs had returned that day from
vacation to find extensive smoke and soot damage throughout
their home.  Alexander Smith followed the damage to the basement
and discovered the remains of his six-gallon aquarium tank which
was melted and torched.  Plaintiffs hired Robert Buckley, a
certified fire investigator, to determine the origin and cause
of the fire.  Buckley concluded that the fire originated from
the aquarium tank.  He ascertained that the pump motor was the
source of the fire.

Plaintiffs also hired Flaherty, an electrical engineer, to conduct an investigation.  Flaherty opined that the tank's pump motor was defective in that it lacked a thermal production device to shut the pump off if it overheated before a fire could start and that any impedance protection the motor had was inadequate.

Plaintiffs purchased the aquarium tank kit, including the pump motor, in 2002 or 2003.  Smith estimates that he used the tank a total of two years since he bought the tank until it burned in the fire in 2019.  At other times it was stored, unplugged, in a closet in the basement.  The tank was operating without any issues as far as Smith was aware and had been in use for several weeks at the time of the fire.

III

Defendants seek summary judgment on Count I which alleges strict liability due to a manufacturing defect, a design defect, and a failure to warn.  Pennsylvania courts have adopted the Restatement (Second) of Torts for strict liability claims. The Restatement provides that

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if . . . (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Restatement (Second) of Torts § 402A.  This rule applies even if "the seller has exercised all possible care in the preparation and sale" of the product.  <u>Id.</u>

  "To bring a Section 402A claim, a plaintiff must demonstrate . . . that the product was defective, that the defect caused the plaintiff's injury, and the defect existed at the time the product left the manufacturer's control."  <u>Barnish v. KWI Bldg. Co.</u>, 980 A.2d 535, 541 (Pa. 2009).  In arguing that there was a manufacturing defect, plaintiffs rely on the malfunction theory which permits a plaintiff to pursue strict liability "based purely on circumstantial evidence in cases where the allegedly defective product has been destroyed or is otherwise unavailable."  <u>Id.</u> at 539.

  A plaintiff need not identify the specific defect in the product but rather "must present evidence from which a jury can infer the elements of a strict liability action, beyond mere speculation."  <u>Id.</u>  Potential circumstantial evidence includes the malfunction of the product, expert testimony as to a variety of possible causes, the timing of the malfunction in relation to when the plaintiff first bought it, and elimination of other possible causes.  <u>Id.</u> at 542-43.  In short, the malfunction theory permits "a plaintiff to prove a defect in a product with evidence of the occurrence of a malfunction and with evidence

eliminating abnormal use or reasonable, secondary causes for the malfunction."  Id. at 541.

Defendants argue that plaintiffs have not eliminated other causes for the failure of the pump motor in issue.  The court disagrees as set forth in this court's memorandum on defendants' motion to exclude.  Plaintiffs have eliminated all obvious alternative sources.

Defendants also aver that there is no evidence of a defect when the product left the manufacturer.  Plaintiffs, however, have pointed to circumstantial evidence for a jury to infer a defect including the fact that the product malfunctioned and started a fire, the expert testimony of Flaherty identifying the cause of the fire and eliminating alternative causes, and the fact that the product malfunctioned after only being used for a total of two years since plaintiffs bought it.

Defendants claim that although it was only used for a total of two years, it was used intermittently over the course of sixteen years and that it was successfully used during that time.  The prior successful use of a product, however, does not "doom[] a plaintiff's ability to present a prima facie case for strict product liability under the malfunction theory."  Id. at 546.  Although the product may have been purchased approximately sixteen years before the fire, it was not in use for most of that time.

The Pennsylvania Supreme Court has explained that "[w]hether a product is in a defective condition is a question of fact ordinarily submitted for determination to the finder of fact; the question is removed from the jury's consideration only where it is clear that reasonable minds could not differ on the issue." Tincher v. Omega Flex, Inc., 104 A.3d 328, 335 (Pa. 2014). There is sufficient evidence for a reasonable jury to find that the pump motor was in a defective condition when it left the manufacturer.

Finally, defendants aver that the malfunction theory does not apply in this case since the pump motor is available to inspect. As explained in more detail in this court's memorandum denying defendants' motion to exclude, there is evidence in the record that the pump motor was significantly damaged and torched in the fire to the extent that a full inspection of the product is not possible. The product does not always have to have been destroyed before the malfunction theory applies. See e.g., Allstate Ins. Co. v. LG Elecs. USA, Inc., 2021 WL 2875603, at *4 (E.D. Pa. July 8, 2021). "Possessing, retaining, and having an expert examine a product does not preclude a plaintiff from advancing a product malfunction theory of liability." Pa. Nat'l Mut. Cas. Ins. Co. v. Sam's East, Inc., 251 A.3d 1250 (Pa. Super. Ct. 2021); see also Dansak v. Cameron Coca-Cola Bottling Co., 703 A.2d 489 (Pa. Super. Ct. 1997).

-6-

Here, it is appropriate to allow plaintiffs to proceed on that theory.  As the Pennsylvania Supreme Court reiterated in Tincher, "bright lines and broad rules always offer a superficially enticing option.  However, we cannot elevate the lull of simplicity over the balancing of interests embodied by the principles underpinning the jurisprudence of the relevant area of law."  Tincher, 104 A.3d at 406.

Plaintiffs also assert that the product had a design defect.  A plaintiff may seek to proceed on a design defect theory under the consumer expectations test, risk-utility test, or both.  See id. at 401.  "The consumer expectations test defines a 'defective condition' as a condition, upon normal use, dangerous beyond the reasonable consumer's contemplation."  Id. at 387.  A product has a defect under this theory "if the danger is unknowable and unacceptable to the average or ordinary consumer."  Id.  This test focuses on the perspective of the reasonable consumer.  Id.

A risk-utility test is essentially a cost-benefit analysis where a product is defective "if a 'reasonable person' would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions."  Id. at 398.  This test focuses on the perspective of the reasonable seller.  Id. at 387.

-7-

Defendants argue that plaintiffs cannot proceed under the consumer expectations test because the product's function is outside the experience of ordinary users.  They also aver that plaintiffs cannot proceed under the risk-utility test because there is no data on the feasibility of a different design or that the risk of fire decreases with another design.

This court disagrees.  First, the aquarium is the type of product where jurors can readily assess the issue of unknowable and unacceptable danger.  There is sufficient evidence for a jury to decide that the failure of the aquarium tank after only two years of use is within the bounds of a consumer's expectations.  Id. at 392-93.  In addition, based on the various factors set forth in Tincher, there is sufficient evidence for a jury to find that the seriousness of harm outweighs the cost of taking precautions under the risk-utility test.  Id. at 389-90.  As set forth in this court's memorandum denying the exclusion of plaintiffs' expert, Flaherty opined that thermal protection only costs a few cents.  Whether a product is in a defective condition is ordinarily a fact for the jury.  Id. at 335.  Plaintiffs may therefore proceed on their claim regarding a design defect under either or both tests.

The court will deny the motion of defendants for summary judgment as to plaintiffs' claim in Count I for strict liability based on manufacturing and design defects.

-8-

IV

Plaintiffs also seek to hold defendants strictly liable for a failure to warn.  The threshold determination in a failure to warn case is "whether the product is defective for lack of sufficient warnings.  A plaintiff therefore must show that the product was sold without sufficient warnings to 'adequately notify the intended user of the unobvious dangers inherent in the product.'"  Hatcher v. SCM Grp. N. Am., Inc., 167 F. Supp. 3d 719, 725 (E.D. Pa. 2016) (quoting Mackowick v. Westinghouse Elec. Corp., 575 A.2d 100, 102 (Pa. 1990)).  The court makes the initial determination on the adequacy of the warning.  Id. at 726.

Plaintiffs have not pointed to any evidence regarding the warnings for the pump motor or argued in any way how they were defective or proximately caused plaintiffs' injuries. Accordingly, the court will grant summary judgment in favor of defendants on plaintiffs' claim in Count I for strict liability due to a failure to warn.

V

Defendants also seek summary judgment on plaintiffs' claim for negligence in Count II of the complaint.  A negligence claim requires a duty or obligation to conform to a certain standard of conduct, a breach of that duty, a causal connection between the conduct and the resulting injury, and actual loss or

-9-

damage to the plaintiff.  R.W. v. Manzek, 888 A.2d 740, 746 (Pa. 2005).  In a products liability case, a plaintiff asserting a negligence claim "must connect injury with a specific defect in the manufacture or design of a product."  Brandon v. Ryder Truck Rental, Inc., 34 A.3d 104, 110 (Pa. Super. Ct. 2011).

Defendants claim that there is no breach of duty or causation sufficient to proceed on a claim for negligence.  As set forth more fully in this court's memorandum on defendants' motion to exclude, plaintiffs' expert Flaherty offers sufficient testimony on the cause of the fire deriving from a defect in the pump motor.  The question of whether defendants were negligent in the manufacture or design of the pump motor is for the jury to decide. The motion of defendants for summary judgment will therefore be denied as to Count II.

VI

Finally, defendants seek summary judgment on plaintiffs' claim in Count III for breach of express or implied warranties on the basis that this claim is time-barred.  The statute of limitations in Pennsylvania for a "breach of any contract for sale must be commenced within four years after the cause of action has accrued."  13 Pa. Cons. Stat. § 2725(a).  "A breach of warranty occurs when tender of delivery is made." 13 Pa. Cons. Stat. § 2725(b).

-10-

Here, plaintiffs purchased the aquarium tank in 2002 or 2003, at least eighteen or nineteen years before this lawsuit was filed.  They state in their opposition to summary judgment that they will not pursue this claim at trial.  Summary judgment in favor of defendants on Count III will be granted since this claim is time-barred.